**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JEFF SHOULDERS**
Law Offices of Steven K. Deig, LLC
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEFFREY S. HEIRONIMUS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 82A01-1204-CR-152 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable Carl A. Heldt, Judge
Cause No. 82C01-1105-FB-654

**November 1, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Jeffrey S. Heironimus appeals the trial court's admission of evidence of witness identifications made of him after police officers' warrantless entry into an accomplice's residence. He contends that the entry was an unconstitutional search and seizure, and any subsequent identifications made as a result of it should be excluded from evidence. We find that it was not an abuse of discretion to admit this evidence because Heironimus does not have standing to assert a Fourth Amendment violation. He had no legitimate expectation of privacy in the house, as it was not his, nor was he an overnight guest. We therefore affirm.

**Facts and Procedural History**

On May 26, 2011, Heironimus robbed the First Federal Savings Bank in Evansville wearing a dark-colored hooded sweatshirt and carrying a backpack. Heironimus insinuated that he had a gun by placing his hand in his backpack and took over $3900 in cash, which included $200 in recorded bait money. The bank's alarm service immediately notified police. Witnesses Bradford Talley and James Hendrix saw a man with a dark hooded sweatshirt and a backpack leave the bank, walk quickly to an alley behind the bank, and get into a red pickup truck that had quickly pulled into the alley. The truck was described as a red Ford F-250 extended cab truck with damage on both sides. Tr. p. 56.

Fourteen minutes after receiving the alert from the bank, Evansville Police Department Sergeant Brian Hildebrandt saw a truck matching the given description parked across the street from 1000 North Third Avenue, which was one mile from the

2

bank. The truck's headlights were on, the keys were in the ignition, and the exhaust pipe was still warm. Sergeant Hildebrandt called for a canine unit, and a police dog arrived that was certified and trained to detect ground disturbances and human odor. The dog sniffed the outside of the truck and followed the scent to the back door of 1000 North Third Avenue. Despite the officer's attempt to get the dog to move on, the dog returned to the back door of the house and would not leave. The officer and the dog stayed at the back door to ensure that no one could leave that way.

More officers arrived at the scene, and based on their belief that the robbery suspects were in the house and might be armed, they decided to secure and clear the house. Officers knocked on the front door and were let inside by a resident of the home, Billy Hack. The officers cleared the house, bringing the approximately seven occupants outside, but did not otherwise search the house. Heironimus and Vincent Driskell, the man who drove the truck away from the robbery, were two of the occupants brought outside. They were handcuffed and detained for show-up identifications.

Sergeant Hildebrandt brought Talley and Hendrix to the scene, and Talley identified Heironimus as the passenger of the red truck. Both Talley and Hendrix identified Driskell as the driver. The bank teller was also brought to the scene and saw that Heironimus matched the physical description of the robber; she later saw Heironimus's photograph on television and definitively recognized him as the robber.

Officers later obtained a search warrant for the house and found $1500 in cash in a room upstairs. The bait money was also surrendered to the police by Driskell's wife, Melissa Hall, the day after the robbery. Additionally, police searched the red truck,

3

finding the registration indicating it belonged to Driskell. An officer with previous knowledge of the truck also confirmed that the truck was Driskell's.

The State charged Heironimus with Class C felony robbery with a habitual-offender enhancement. Heironimus filed a motion to suppress the identification evidence, arguing that the identifications were the fruits of an illegal entry by police into the home. The trial court conducted a hearing, and the State argued that the house was not Heironimus's residence. The trial court denied the motion to suppress. A jury trial was held, and Heironimus was found guilty. Heironimus was sentenced to eight years at the Department of Correction, with an additional ten years for the habitual-offender enhancement, for a total executed sentence of eighteen years.

Heironimus now appeals.

**Discussion and Decision**

Heironimus contends that the trial court abused its discretion by admitting the witness identifications at trial. A trial court has broad discretion in ruling on the admission or exclusion of evidence. *Kimbrough v. State*, 911 N.E.2d 621, 631 (Ind. Ct. App. 2009). The trial court's ruling on the admissibility of evidence will be disturbed on review only upon a showing of an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. *Id.* Error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected. Ind. Evidence Rule 103.

Heironimus contends that the trial court abused its discretion in admitting the identification evidence because it was the product of an unconstitutional search, in

4

violation of his Fourth Amendment rights.[1]  The Fourth Amendment to the United States

Constitution provides that

> "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

The Fourth Amendment is made applicable to the States via the Due Process Clause of the Fourteenth Amendment.  *Mapp v. Ohio*, 367 U.S. 643, 656 (1961).  Evidence obtained in violation of a defendant's Fourth Amendment rights may not be introduced against him at trial.  *Id.* at 648-60.

In order to assert that a police entry into a home is unlawful and therefore a violation of the Fourth Amendment, the defendant must have standing, which requires a legitimate expectation of privacy in the premises.  *Arcuri v. State*, 775 N.E.2d 1095, 1100 (Ind. Ct. App. 2002), *trans. denied*.  One way to have that legitimate expectation of privacy is for the defendant to have control over or ownership of the premises searched.  *Peterson v. State*, 674 N.E.2d 528, 532 (Ind. 1996).  An overnight guest can also have a "legitimate expectation of privacy in his host's home and may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the owner of the premises may not."  *Matson v. State*, 844 N.E.2d 566, 570 (Ind. Ct. App. 2006) (citing *Minnesota v. Olson*, 495 U.S. 91, 98 (1990); *Hanna v. State*, 726 N.E.2d 384, 390 n.4 (Ind. Ct. App. 2000)), *trans. denied*.

---

[1] Heironimus makes no claim under Article 1, Section 11 of the Indiana Constitution and has therefore waived review under that provision.

In this case, the evidence shows that Heironimus did not live at 1000 North Third Avenue, nor was he an overnight guest at the time of the bank robbery. Rather, Heironimus was merely present at the premises with the consent of the owner, so he does not have standing to challenge the constitutionality of the warrantless entry. Heironimus did give 1000 North Third Avenue as his address in his unsworn claim when he was booked into jail, Defense's Ex. A, but the State disputed that fact at the suppression hearing. Supp. Hr'g Tr. p. 67 ("I don't think that's accurate . . . . I don't think he lived there.").

Further, all of the other evidence adduced at trial supports the fact that he did not live at that address. Heironimus's driver history information lists his previous and current residences and mailing addresses, and none includes 1000 North Third Avenue. Defense's Ex. A. His handwriting exemplar listed his address as 3500 Harlan, and when Heironimus sent a letter encouraging Talley not to testify against him at trial, he listed his return address as 712 Hess Avenue. Finally, at trial, Dylan Hall, a resident of 1000 North Third Avenue, testified that Heironimus "stayed there a few times," but that the attic bedroom wasn't his. Tr. p. 162-63. Looking at this evidence together, the trial court did not abuse its discretion in admitting the identification evidence against Heironimus. He does not have standing to raise a constitutional challenge against the warrantless entry by police into the home because he was merely a visitor and therefore had no legitimate expectation of privacy in the premises. The identification evidence is therefore not the product of an unconstitutional search.

6

Affirmed.

MATHIAS, J., and BARNES, J., concur.